IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DORMAN PRODUCTS, INC., <br><br>     Plaintiff, <br><br>  v. <br><br> TODD CARDELLO, <br><br>     Defendant. | CIVIL ACTION <br> NO. 25-4249 |

OPINION

**Slomsky, J.**                                                                                                              October 7, 2025

## I.     INTRODUCTION

Plaintiff Dorman Products, Inc. ("Dorman") brings this action against Defendant Todd Cardello ("Cardello"), its former employee, after Cardello left Dorman's employ to work for a competitor, TrakMotive Global Industries, Inc. ("TrakMotive")[1]. In its Complaint, Plaintiff alleges two causes of action: (1) Breach and Anticipatory Breach of Contract (Count I) and (2) Unfair Competition (Count II). (Doc. No. 1.)

On July 28, 2025, the Complaint was filed. (Id.)  On that same date, Plaintiff filed a Motion for a Temporary Restraining Order and a Preliminary Injunction (Doc. Nos. 2, 3.)  Plaintiff seeks injunctive relief to enforce the terms of its non-compete agreements with Cardello and to protect its legitimate business interests.  (Doc. No. 3 at 5–6.)  On August 14, 2025, Defendant filed a Response in Opposition to the Motion for a Temporary Restraining Order and Preliminary Injunction.  (Doc. No. 29.)  On August 28, 2025, Plaintiff filed a Reply in Further Support of their Motion for a Preliminary Injunction.  (Doc. No. 42.)  On September 10, 2025, an evidentiary

---

[1]  TrakMotive is the registered trademark and operating name for all global sales of Advanced Innovative Technology Corp. ("AIT"). (Doc. No. 29 at 37, n. 2.)

1

hearing was held on the Motion. (Doc. No. 48.)  At the hearing two witnesses testified: Jeffrey Darby, Dorman's Chief Commercial Officer and Senior Vice President of Sales and Marketing; and Bin Wang, TrakMotive's Global Chief Financial Officer.  (See Doc. No. 53.)  At the end of the hearing, the parties were given until September 23, 2025 to file supplemental memoranda, which they timely filed.  (Doc. Nos. 58, 59.)  The Motion for a Preliminary Injunction is now ripe for disposition. For reasons that follow, the Motion for a Preliminary Injunction  (Doc. No. 2)  will be granted.

II.     **BACKGROUND**

   A.     **Dorman's Employment Agreement with Cardello**

Plaintiff Dorman is a global organization that sells automotive aftermarket replacement products, including window regulators, drive shafts, and axles.  (Doc. No. 3 at 6.)  The threat of fast followers—companies that enter a market after an innovator and quickly imitate products or services—is particularly salient in the aftermarket automative part industry.  (Id. at 7.)

On January 20, 2020, Dorman offered Defendant Todd Cardello a position as Vice President of Category Management & Business Insights.  (Id. at 7–8.)  At the outset of Cardello's employment with Dorman, Cardello and Dorman entered into an Employment Agreement that contained a covenant not to compete, covenants not to solicit customers and employees, and a confidentiality covenant.  (Id. at 10, Pl.'s Ex. A.)

By signing the Employment Agreement, Cardello acknowledged that, as someone in his position, he would be privy to the company's trade secrets and confidential or proprietary business information.  (Doc. No. 3 at 11; Doc. No. 2-1, Ex. A ("I, Todd Cardello understand that my position with Dorman Products is one of trust and confidence because of my access to trade secrets and confidential or proprietary business information.")).  The Employment Agreement's

non-compete covenant barred Cardello, for eighteen (18) months after termination from his position with Dorman, from employment involving:

> the manufacture, distribution or sale of automotive replacement parts or general merchandise hardware of the kind or type sold by Dorman Products at the time of [Cardello's] termination or to be released by Dorman Products within one year following [Cardello's] termination.

(Doc. No. 2-1, Ex. A.)

The Employment Agreement also contained a non-solicitation covenant which required Cardello for eighteen (18) months from the termination of his Dorman Employment not to:

> solicit, recruit, encourage or induce any contractor, agent, client or customer, or supplier of Dorman Products to terminate its/his/her relationship with Dorman Products, in whole or in part, or solicit, induce or encourage any person/entity to terminate a contractual relationship with Dorman Products or to refrain from entering into a contractual relationship with Dorman Products (including, without limitation, any prospective customers/clients or suppliers of Dorman Products).

(Id.)

The Employment Agreement further contained a confidentiality covenant, under which Cardello agreed not to:

> directly or indirectly, use or disclose for my own benefit or the benefit of another Dorman Products trade secret or confidential or proprietary information, whether or not the information is acquired, learned, attained or developed by myself alone or in conjunction with others.

(Id.)

Cardello agreed that the limitations set forth in the Employment Agreement "are reasonable and properly required for the adequate protection of Dorman Products business" and agreed that, should the court deem "any such limitation unreasonable, [I] agree to the reduction of the limitation to the area or period which the court shall deem reasonable." (Id.)

During each year of employment with Dorman beginning in 2021, Dorman offered Cardello additional compensation in the form of equity. (Doc. No. 3 at 10.) Specifically,

3

Cardello and Dorman entered into twelve (12) contracts that provided various equity awards totaling over $1,000,000. (Id.) In exchange for this additional compensation, Cardello again agreed to certain requirements, including a non-competition covenant and non-solicitation covenants. (Id. at 12.) The Equity Agreements' non-competition covenants generally required Cardello to abstain, for one year from the termination of his Dorman employment and in any state, jurisdiction or territory in which Dorman and its affiliates are engaged in business, from employment involving:

> the manufacture, distribution or sale of automotive replacement parts or general merchandise hardware, including parts for heavy-duty vehicles, in each case including but not limited to those of the kind or type sold by the Company at the time of Participant's termination or scheduled to be released by the Company within one year following Participant's termination of employment or service.

(See, e.g., Doc. No. 2-1, Ex. B.)

In the Equity Agreements, Cardello also agreed for one year to abstain from recruiting customers of behalf of entities competitive with Dorman. (Doc. No. 2-1, Ex. B.)

**B.    Cardello Leaves Dorman's Employment for a Position with TrakMotive**

On July 1, 2025, Cardello resigned from his employment with Dorman and informed Dorman that he would be joining TrakMotive. TrakMotive is a specialist supplier in the automotive aftermarket parts industry with distribution offices in the United States, Canada, and Germany, and manufacturing facilities in other countries. (Doc. No. 29 at 3.) TrakMotive concentrates on three core product lines: axles, drive shafts, and window regulators for passenger vehicles, light-duty trucks, and all-terrain vehicles. (Id.) TrakMotive and Dorman are competitors in several products, such as drive shafts and window regulators. (Id.) In 2023, TrakMotive successfully won AutoZone's window regulator business for the years 2023 and 2024 through a competitive line review and a request for quotation (an "RFQ"), beating out Dorman and other competitors. (Id.)

As an expanding company, TrakMotive began working with a recruiter, Frank Cernuto, to advertise and fill the position of Vice President of Category Development. (Doc. No. 29 at 11.) This new executive role would report directly to the CEO, Robert Zhu, and required a candidate with broad experience in external industries and familiarity with automotive aftermarket parts. (Id. at 11.) Because Mr. Cernuto had previously placed Cardello at Dorman, and believed he was the right fit, he introduced Cardello to TrakMotive in January 2025. (Id.) In March 2025, Cardello traveled to California for a full day of meetings with TrakMotive's CEO, as well as its other C-suite individuals. (Doc. No. 53 at 68, 104.)

TrakMotive asserts that it has taken steps to ensure Cardello does not violate his agreements with Dorman. His offer letter specifically states:

> Please be advised that [TrakMotive] is directing you not to retain possession of, or ever disclose to [TrakMotive], any confidential and/or proprietary information belonging to a current or former employer. Such information includes customer lists, business and marketing plans, trade secrets and any other competitively sensitive material. All such information must be returned to your current employer before starting work for [TrakMotive] and may not be used in any manner with, on behalf of, or by, [TrakMotive] or any of its employees.
>
> Any property of your prior employer should be returned. Do not copy or retain any confidential or proprietary information in anticipation of leaving, nor divert or delay any corporate opportunity from your current employer. Do not solicit any customer or employee to leave your current employer while still employed there or if you are contractually barred from doing so for a period of time.
>
> Additionally, if you are subject to an employment agreement with your former employer, you are required to follow the terms of that agreement. You have already provided an agreement to [TrakMotive] for review, and you will be advised as to how to proceed. You agree to not violate the enforceable provisions of that contract while performing your duties and responsibilities. We ask that you comply with the foregoing instructions. Please be advised that any violation of any employment or other agreement with your former employer may result in disciplinary action. If you are unable to comply with any contractual obligations or have questions about our expectations, please contact me.

(Doc. No. 2-1 at 3.)

Cardello's role at TrakMotive is not explicitly defined and does not have a job description outside the broad parameters that he would not work in sales or in any manner that would compete with Dorman. (Doc. No. 29 at 14.) TrakMotive asserts that its intent was that Cardello would help prepare his job description after starting work and base it on collaboration with the executive team. It was intended to bring Cardello's insights to high-level operational strategy for team development, people management, and development of internal processes. (Id. at 14.)

### III.     STANDARD OF REVIEW

A temporary restraining order and preliminary injunction are equitable remedies that preserve the status quo, defined as "the last, peaceable, noncontested status of the parties," while "the merits of the cause are explored through litigation." See Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004); J.O. v. Orange Twp. Bd. of Educ., 287 F.3d 267, 273 (3d Cir. 2002) (citation omitted). Injunctive relief—whether through a temporary restraining order or preliminary injunction—is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) (citation omitted); see also Kos Pharmaceuticals, Inc., 369 F.3d at 708 ("Preliminary injunctive relief is 'an extraordinary remedy' and 'should be granted only in limited circumstances.'") (citation omitted).

Under Federal Rule of Civil Procedure 65, a temporary restraining order and a preliminary injunction are analyzed under the same standard. Zaslow v. Coleman, 103 F. Supp. 3d 657, 662 (E.D. Pa. 2015). A party is entitled to injunctive relief if it demonstrates (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief. Child Evangelism Fellowship of N.J. v. Stafford Tp. Sch. Dist., 386 F.3d 514, 524 (3d Cir. 2004). "As a court sitting in equity, the

District Court's task [is] to weigh the four factors, but it [is] not incumbent on [the movant] to prevail on all four factors, only on the overall need for an injunction." Neo Gen Screening, Inc. v. TeleChem Int'l, Inc., 69 F. App'x 550, 554 (3d Cir. 2003).

As the moving party, it is Dorman's burden to introduce evidence with respect to the first two factors—i.e., likelihood of success on the merits and irreparable harm. Id. If the first two "gateway factors" are satisfied, "a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." Reilly v. City of Harrisburg, 858 F.3d 173, 179 (3d Cir. 2017). "All four factors should favor preliminary relief before the injunction will issue." S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 374 (3d Cir. 1992) (citation omitted).

IV.   ANALYSIS

   A. Likelihood of Success on the Merits

The first factor requires that Plaintiff demonstrate that its likelihood of success on the merits is "significantly better than negligible but not necessarily more likely than not." Reilly, 858 F.3d at 179. In this matter, Dorman seeks a preliminary injunction as it relates to the breach of its non-compete agreements with Cardello.

   i.   The Dorman Non-Compete Agreement Is Enforceable

Under Pennsylvania law, for a non-compete covenant to be enforceable, (1) it must be "incident to an employment relation between the parties to the covenant," (2) the restrictions must be "reasonably necessary for the protection of the employer," and (3) the restrictions must be "reasonably limited in duration and geographic extent." Sidco Paper Co. v. Aaron, 351 A.2d 250, 252 (Pa. 1976). The burden is on the employee to demonstrate that the non-compete covenant is "unreasonable[]." John G. Bryant Co. v. Sling Testing & Repair, Inc., 369 A.2d 1164, 1169 (Pa. 1977). This burden is "particularly heavy," as "the determination of reasonableness is

7

a factual one, requiring consideration of all the facts and circumstances." Victaulic Co. v. Tieman, 499 F.3d 227, 235 (3d Cir. Aug. 23, 2007) (quoting WellSpan Health v. Bayliss, 869 A.2d 990, 999 (Pa. Super. Ct. 2005)).

Cardello argues that the restrictive covenants on his employment with another company are unenforceable for two reasons: (1) they do not protect legitimate interests; and (2) are not reasonably limited in terms of duration or geographic scope. The Court disagrees.

First, the restrictive covenants are necessary to protect Dorman's most sensitive trade secrets and other confidential business information. See Fisher Bioservices, Inc. v. Bilcare, Inc., No. 06-cv-567, 2006 WL 1517382 *13 (E.D. Pa. May 31, 2006) ("Customer goodwill and confidential business information have each been recognized as legitimate business interests that may be afforded protection by a restrictive covenant.") Cardello contends that his "new role at TrakMotive ensures protections of [Dorman's] interests by prohibiting his disclosure of any confidential information, solicitation of prior customers and employees, or violation of Dorman agreements."

However, that does not change the fact that Cardello had access to more global confidential information than other sales vice presidents. (Doc. No. 59 at 10.) Further, as part of Cardello's role, he led all category management, channel pricing for all customers, and oversaw Dorman's entire Mexico and Latin American business. (Id.) Cardello even attended and participated in strategy meetings until the very last days of his employment. (Id. at 9.) Cardello admitted that during these meetings, discussions were had involving its competition with TrakMotive and strategies to win new business from particular accounts. (Doc. No. 53 at 60.) Given the vast amount of confidential information possessed by Cardello, Dorman has a legitimate interest in protecting its confidential business information.

Second, the restrictive covenants are reasonable in scope. Cardello is restricted from competing in the aftermarket automotive products industry for a period of 12 and 18 months following his resignation. The 18-month restriction is a reasonable duration due to the senior role Cardello held at Dorman and to the broad access to confidential information he had. See, e.g., WellSpan Health, 869 A.2d at 1000 (enforcing two-year postemployment noncompetition covenant); Pulse Techs., Inc. v. Dodrill, No. 07-cv-65, 2007 WL 789434, at *11 (D. Or. Mar. 14, 2007) (applying Pennsylvania law and enforcing two-year, nationwide restrictive covenant).

In addition, the Third Circuit has held that the notion of a too-broad geographic scope has become "antiquated" in light of the increasingly global economy. Quaker Chem. Corp. v. Varga, 509 F. Supp. 2d 469, 477 (E.D. Pa. 2007) (citing Victaulic, 499 F.3d at 237 ("In this Information Age, a per se rule against broad geographic restrictions would seem hopelessly antiquated, and, indeed, Pennsylvania courts (and federal district courts applying Pennsylvania law) have found broad geographic restrictions reasonable so long as they are roughly consonant with the scope of the employee's duties.")). In Victaulic, the covenant prevented a former employee from working for multiple competitors because "[t]hese competitors might be able to use a former Victaulic employee's specialized knowledge of Victaulic's product lines and sales strategies anywhere in the world that the two compete." 499 F.3d at 238. The Victaulic Court held that the geographic limitations must be read in connection with the overall non-compete covenant. 499 F.3d at 238.

Victaulic provides a useful comparison to the one at hand. Cardello is prohibited only from working for businesses that compete with Dorman in the aftermarket automotive products industry. (Doc. No. 59 at 5.) Both Dorman and TrakMotive admit that they are direct competitors on four product lines–axles, driveshafts, window regulators, and chassis–to the same customers nationwide. (Doc. No. 59 at 5.) Furthermore, courts have upheld non-compete

covenants with broad geographic restrictions where the employee's duties and the employer's customers were geographically broad. See Nextgen Healthcare Info. Sys., Inc. v. Messier, 2005 U.S. Dist. LEXIS 27243, 2005 WL 3021095, at *13 (E.D. Pa. Nov. 10, 2005) ("Nationwide non-compete restrictions are enforceable under Pennsylvania law where the former employer does business on a nationwide scale."); Coventry First, LLC v. Ingrassia, 2005 U.S. Dist. LEXIS 13759, 2005 WL 1625042, at *9 (E.D. Pa. July 11, 2005) (noting that courts uphold nationwide territorial scopes when the employee has actually serviced clients nationwide). Therefore, the restrictive covenant is reasonable considering its geographic scope and duration.

### ii. Cardello Is in Breach of the Non-Compete Agreement

Under the non-compete agreement, as explained above, Cardello is barred from employment involving businesses that compete with Dorman for a period of eighteen (18) months following his termination of employment with Dorman. Cardello admits that TrakMotive is a direct competitor of Dorman, and that being employed at TrakMotive would appear to be inconsistent with provisions of his employment agreement. (Doc. No. 53 at 58.)

Because Dorman has established that it is more likely than not that Cardello is in breach of the non-compete covenant of his Employment agreement with Dorman, Dorman has met its burden to show a substantial likelihood of success on the merits of its claims. Therefore, the first Reilly prong weighs in favor of granting preliminary injunctive relief.

### B. Irreparable Harm

The second factor requires courts to determine whether it is "more likely than not [Plaintiff will] suffer irreparable harm in the absence of preliminary relief." Reilly, 858 F.3d at 179. Dorman persuasively argues that they will be irreparably harmed by the loss of business,

confidential information, and customer goodwill if Cardello is not enjoined from working for TrakMotive for eighteen (18) months.

"In order to demonstrate irreparable harm, the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 91 (3d Cir. 1992) (citations omitted). "Trade secrets of an employer, customer goodwill and specialized training and skills are all legitimate interests protectable through a general restrictive covenant." Vector Security, Inc. v. Stewart, 88 F. Supp. 2d 395, 400 (E.D. Pa. 2000). "Customer goodwill and confidential business information have each been recognized as legitimate business interests that may be afforded protection by a restrictive covenant." Fisher Bioservices, Inc., 2006 WL 1517382, at *13; see also Charles Schwab & Co. v. Karpiak, No. 06-4010, 2007 WL 136743, at *13 (E.D. Pa. Jan. 12, 2007).

Here, Cardello possesses extensive knowledge of Dorman's trade secrets and confidential information. While Cardello argues that Dorman will not be harmed because his role at TrakMotive will be different, a review of the record demonstrates otherwise. For example, as Vice President of Sales and Category Management at Dorman, Cardello received confidential information, including the go-to-market, defense and pricing strategy information, knowledge of new products, financials, and customer growth strategies. (Doc. No. 53 at 60.) In his new role at TrakMotive, Cardello is expected to strengthen the company's execution to improve its positioning against competitors, play a role in overall pricing strategy, and facilitate increased sales by assessing the sales team and improving their skills. (Doc. No. 59 at 9.) It is unrealistic to think that Cardello would not as least unintentionally draw on his prior experience at Dorman and his knowledge sourced from his employment there in executing his new role at TrakMotive.

Furthermore, the non-compete exists to prevent Cardello from working for a direct competitor of Dorman, a category in which TrakMotive squarely fits. As explained above, not only does TrakMotive compete with Dorman on all three of TrakMotive's core product lines (axles, driveshafts, and window regulators), but TrakMotive is implementing a new product line around chassis, which happens to be Dorman's largest product category. (Doc. No. 53 at 66); See Nat'l Bus. Servs., Inc. v. Wright, 2 F. Supp. 2d 701, 709 (E.D. Pa. 1988) (finding evidence of irreparable harm where employee had "wide-ranging knowledge of former [employer's] business, products and customers, which would be impossible for her not to call on if she was working for [employer's] direct competitor"). Cardello testified, and TrakMotive confirmed, that Dorman sells products that compete with all of TrakMotive's product lines to the same customers nationwide. (Doc No. 53 at 16–17; 148).

Therefore, Cardello has a very real opportunity to harm Dorman's legitimate business interests by working for TrakMotive.

**C. Harm to Defendants**

This third factor requires the Court to balance the harm to Dorman if the injunction were not issued against the harm to Cardello if it were issued improvidently. See Merrill Lynch, Pierce, Fenner, & Smith, Inc. v. Napolitano, 85 F. Supp. 2d 491, 497 (E.D. Pa. 2000).

In considering the harm Defendants might suffer should injunctive relief be granted, "the district court must undertake to balance the hardships to the respective parties. The court must ensure that the issuance of an injunction would not harm the [Defendant] more than a denial would harm the [Plaintiff]." Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc., 143 F.3d 800, 805 (3d Cir. 1998). Furthermore, courts have held that the deliberate action of an employee to disregard a non-compete covenant weighs in favor of granting a preliminary injunction. See

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Napolitano, 85 F. Supp. 2d 491, 498 (E.D. Pa. 2000) ("Significantly, any harm to Napolitano would be self-inflicted; he anticipated that Merrill Lynch immediately would seek to enforce its unambiguous employment contract, and chose to breach it nevertheless. The self-inflicted nature of any harm suffered by the wrongdoer (Napolitano) weighs heavily in favor of granting preliminary injunctive relief."); Graphic Mgmt. Assocs. v. Hatt, 1998 WL 159035, at *1 (refusing to allow a "high level officer of a company who betrayed his employer . . . to circumvent a covenant not to compete"); Nat'l Bus. Servs., Inc., 2 F. Supp. 2d at 709 ("[The employee] voluntarily left [the former employer], with full knowledge that [the former employer] would enforce the covenants against her; this factor is worth considering in balancing the harm to the parties.")

    Here, Cardello argues that an injunction will cause greater harm to him than to Dorman because he would be barred from an entire industry. (Doc. No. 29 at 24). The Court is not persuaded by Cardello's argument. In fact, Cardello contradicted himself about the harm to him by not being employed at TrakMotive when he testified that he had the opportunity to take a job within the aftermarket automotive parts industry at an employer that was not competitive with Dorman. (Doc. No. 53 at 57.) Specifically, Cardello testified that he was in communication with a recruiter about a position at a company that manufactures high performance coating systems. (Id.) And most significantly, TrakMotive has agreed to fully indemnify Cardello and to compensate him at the amount of his regular salary for the duration of his non-compete period if it should be enforced.[2] Therefore, granting preliminary relief will not result in greater harm to Cardello.

---

[2] The indemnification agreement between TrakMotive and Cardello provides that TrakMotive agreed to pay all of Cardello's litigation fees and costs. (Doc. No. 53 at 73.) TrakMotive further

### D. The Public Interest

The last factor considers the public interest. The public interest is best served in this case by upholding the restrictive covenants Cardello freely entered into. If this Court were to allow Cardello to violate his restrictive covenant not only would this encourage Dorman's other employees to violate their restrictive covenants, but it would also undermine the value of restrictive covenants altogether. Graphic Mgmt. Assocs., Inc. v. Hatt, 1998 WL 159035, at *18 (E.D. Pa. Mar. 18, 1998).

Upon review of all the Reilly factors, the four factors weigh in favor of granting a preliminary injunction. Therefore, a preliminary injunction is appropriate in this case.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for a Preliminary Injunction (Doc. No. 2) will be granted. An appropriate Order follows.

---

agreed to pay Cardello his base salary of $375,000 a year and the benefits costs for his family for up to 18 months if he is enjoined. (Doc. No. 53 at 73–74)